**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO: 0:25cv61401

| | |
|---|---|
| JOSEPH THOMAS, on behalf of himself and all others similarly situated, | |
| Plaintiff, | CLASS ACTION |
| V. | DEMAND FOR JURY TRIAL |
| DRINK LMNT, Inc., | |
| Defendant. | |

**CLASS ACTION COMPLAINT**

Plaintiff, JOSEPH THOMAS (hereinafter "Plaintiff or "Thomas"), on behalf of himself and all others similarly situated, sues Defendant, Drink LMNT, Inc. ("Defendant" or "LMNT") and alleges the following based on personal knowledge as to the allegations regarding Plaintiff and otherwise based on information and belief.

**INTRODUCTION**

1.     This is a national class action brought by Plaintiff on behalf of himself and similarly situated purchasers of LMNT's flavored electrolyte drink mix products seeking damages and other relief arising from the deceptive, unfair, and misleading conduct of Defendant in connection with the advertising, marketing, and sales of its products.

2.     For years, Defendant LMNT developed, marketed, and sold its drink mix products with ads and labels that targeted "health seeking consumers" and described its products with statements such as "No Artificial Ingredients," "All Natural Ingredients," "No Dodgy Ingredients," and "Paleo-Keto Friendly" so that reasonable consumers would believe that LMNT contained no unlisted ingredients and certainly no artificial fillers. However, these

1

statements were false and misleading because LMNT products actually contain maltodextrin, a highly processed and synthetic ingredient, which is not listed on the product label or packaging.   Plaintiff and the putative class members have been injured as a result of Defendant's false and misleading statements and seek relief as set forth herein.

## PARTIES

3.      Plaintiff, Joseph Thomas, is an individual over the age of 21 and is a citizen of Florida.  He has resided in Broward County, Florida since December 2023.  Before moving to Florida, Thomas resided in Henderson, Nevada.   On numerous occasions, Plaintiff purchased boxes of LMNT products while residing in Nevada and Florida.

4.      Defendant Drink LMNT, Inc. is a Delaware corporation, with its principal place of business in Big Sky, Montana. Consequently, for diversity purposes, Defendant is a citizen of Delaware and Montana.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction of this action under the Class Action Fairness Act ("CAFA") of 2005.  Pursuant to 28 U.S.C. § 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, there are at least 100 class members in the putative class, and at least one of the members of the proposed class is a citizen of a different state that Defendant.  The Court has supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367.

6.      The Court has personal jurisdiction over the Defendant because it continuously and systematically conducts business in Florida, has offices in Florida, and engages in business in Florida.  Defendant regularly engaged in business in Florida and its products are available and sold in stores throughout the state, such as Target and The Vitamin Shoppe, as well as through its

website, www.drinklmnt.com.  The Court also has personal jurisdiction over Defendant because it committed deceptive acts in Florida, and has extensive contacts with this forum, including by selling and shipping products to consumers in this District.

7.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Plaintiff resides here and the causes of action accrued in this District and a substantial part of the events, acts, and omissions giving rise to the claims occurred here.  Further, Defendant transacts business in this District and its wrongful conduct impacted the general public and consumers in this District.

## FACTUAL  BACKGROUND

8.     Defendant manufactures, markets, and sells LMNT electrolyte drink mixes ("LMNT") targeting "health-seeking consumers looking to support their electrolyte needs." These primary target consumers seek hydration support from natural, sugar-free sources that contain no fillers or artificial ingredients.  LMNT aggressively promotes its products as "keto" and "paleo" friendly and aligned with a "whole foods" diet -- promises that resonate with consumers seeking clean, minimally processed nutritional supplements who are willing to pay a price premium for those attributes.



*Figure A.*[1]

---

[1]https://drinklmnt.com/collections/salt/?_gl=1*1wcphm*_gcl_au*MTA4NzcyOTEzMy4xNzQ5ODIxMTc1*_ga*O TI2Njc5Mjc0LjE3NDk4MjExNzU.*_ga_BKZV7MVXM7*czE3NTIwNzg3MTQkbzUkZzEkdDE3NTIwNzkwOTc

9.      These marketing materials position LMNT as consistent with a "whole food" diet, which emphasizes natural, whole foods and eschews highly processed foods and additives.  Similarly, LMNT reported in its public filings that its products contain no sugar, no fillers and no artificial ingredients.[2]  Defendant contrasts a "whole foods diet" with the "Standard American Diet (also called the Western diet)," which are high in processed foods that are full of refined carbs, sugar, vegetable oils, and food additives.  These representations communicated to Plaintiff and other members of the Class are central to the marketing and sale of the LMNT products.  Defendant also publicly advertises LMNT with taglines like "Everything you need and nothing you don't" and assures consumers that its products contain "no dodgy ingredients," while repeatedly emphasizing a formulation of solely essential electrolytes and free from highly processed additives.



***Figure B***.[3]

10.      At all times material, LMNT highlighted the "all natural" and "whole food" nature of the products to its heath-seeking consumers to differentiate itself from competitors

kajUxJGwwJGgw
[2] https://www.sec.gov/Archives/edgar/data/1871551/000187155123000001/lmntc-ar.pdf.
[3] https://drinklmnt.com/pages/ingredients/?_gl=1*1wcphm*_gcl_au*MTA4NzcyOTEzMy4xNzQ5ODIxMTc1*_ga*OTI2Njc5Mjc0LjE3NDk4MjExNzU.*_ga_BKZV7MVXM7*czE3NTIwNzg3MTQkbzUkZzEkdDE3NTIwNzkwOTckajUxJGwwJGgw

and in order to charge a higher product price.  Defendant sold its products at a premium price above other competing products in the marketplace that do not claim to be "all natural" or artificial ingredient free.  The "clean" formulation is shown prominently and uniformly on every box and individual packet of LMNT electrolyte drink mix which emphasized its purported key ingredients: sodium (1000 mg), potassium (200 mg) and magnesium (60 mg).



*Figure C and Figure D*.[4]

11.     Yet Defendant conceals the presence of maltodextrin on LMNT's product packaging, advertising, and ingredient listing (a consistent practice regarding its various flavors that use the same formulation).

---

[4]https://drinklmnt.com/collections/salt/?_gl=1*1wcphm*_gcl_au*MTA4NzcyOTEzMy4xNzQ5ODIxMTc1*_ga*O
TI2Njc5Mjc0LjE3NDk4MjExNzU.*_ga_BKZV7MVXM7*czE3NTIwNzg3MTQkbzUkZzEkdDE3NTIwNzkwOTc
kajUxJGwwJGgw



***Figure E.*** [5]

12.     Contrary to its representations and undisclosed to consumers, LMNT contains between 300 and 450 milligrams per serving of maltodextrin -- a highly processed food additive commonly used as a sweetener or filler in processed foods.  The amount of maltodextrin in LMNT (300 to 450 mg) actually exceeds the amount of potassium and magnesium combined.  Putting this all together, LMNT contains more maltodextrin than the total of two of its three supposed primary ingredients, and is fundamentally inconsistent with a whole-food, Paleo, or Keto-Friendly diet.

13.     Maltodextrin is neither a whole-food ingredient nor compatible with ketogenic (keto) and paleolithic (paleo) dietary standards.  As such, the LMNT products contain unnatural, synthetic, and/or artificial ingredients.

---

[5]https://drinklmnt.com/pages/ingredients/?_gl=1*1wcphm*_gcl_au*MTA4NzcyOTEzMy4xNzQ5ODIxMTc1*_ga*
OTI2Njc5Mjc0LjE3NDk4MjExNzU.*_ga_BKZV7MVXM7*czE3NTIwNzg3MTQkbzUkZzEkdDE3NTIwNzkwO
TckajUxJGwwJGgw

14.    Maltodextrin has a glycemic index higher than table sugar -- as high as 110 -- and can quickly raise blood sugar and insulin levels, making it particularly unsuitable for those on a keto diet.

15.    Maltodextrin is also highly processed -- requiring industrial production by enzymatic or acid hydrolysis of starch, followed by purification and spray drying -- making maltodextrin incompatible with whole-food and paleo diets, which emphasize minimally processed foods in their natural state.    Maltodextrin is not found in nature, but rather it is manufactured (i.e. artificial).

16.    Research has cautioned that the consumption of maltodextrin, which is incorporated into many processed foods, can lead to the promotion of intestinal inflammation and a risk factor for chronic inflammatory diseases – all relevant concerns that are particularly acute for consumers seeking to maintain a clean, whole-food diet, including a paleo or keto diets.

17.    Individuals who adhere to a ketogenic diet should be eating mostly meats, fish, eggs, and non- starchy veggies and avoid foods that are high on the glycemic index.  As a highly processed carbohydrate, maltodextrin has a higher glycemic index than table sugar, meaning maltodextrin is more likely to produce sharp increases in blood sugar than sugar itself.  Consequently, maltodextrin is fundamentally incompatible with the keto diet.

18.    LMNT is also inconsistent with a paleo diet, which consists of fruits, vegetables, lean meats, fish, eggs, nuts and seeds -- foods that in the past people could get by hunting and gathering.  So processed foods, as well as fillers and additives produced through industrial processes are to be avoided.  As a refined carbohydrate and food additive produced through industrial processes, maltodextrin qualifies as a processed food.

19.     By marketing LMNT as consistent with a whole-food diet such as a "paleo-keto friendly" diet or as free from "dodgy ingredients," Defendant warrants that LMNT products are clean, whole-food nutritional supplements that are free from highly processed food additives, like maltodextrin.

20.     Defendant's deceptive representations about LMNT are likely to mislead reasonable consumers acting reasonably under the circumstances, such as Plaintiff and members of the Class.

21.     Defendant and its agents, employees, and representatives created and/or authorized the unfair, misleading and/or deceptive advertising and statements for the LMNT products as described herein.

22.     As misbranded products sold to consumers pursuant to unfair and deceptive practices, the product price was artificially inflated, or the products were rendered valueless. Plaintiff and the class members paid a price premium when purchasing LMNT products – i.e. paid more for the electrolyte drink mixes than they otherwise would have paid – or paid for a product they would not have purchased at all had they been told the truth.

23.     By marketing and representing LMNT as a clean, all-natural, whole-food nutritional supplement free from highly processed food additives (while concealing the high content of maltodextrin), Defendant was able to sell their products to the target consumers, as well as charge a price premium for products.  A one-time purchase of a 30-pack of LMNT drink mix from its website was priced at $45.  LMNT capitalized on its marketing strategy by taking advantage of its health-seeking consumers being targeted.

24.     In addition to sales in local retail stores in Florida, Nevada, and around the country, LMNT electrolyte drink mix is also sold online (like on drinklmnt.com and

Amazon.com). In connection with all of these sales, LMNT failed to disclose maltodextrin as an ingredient and its presence was concealed from Plaintiff and the class members.

25. Defendant's deception involving its use of maltodextrin was recently uncovered and currently, an online article called "What's the Deal with Natural Flavors" written by co-founder Robb Wolf confirms the maltodextrin content in LMNT products.[6] Yet, the product packaging, ingredients, and warranties still conceal its presence and amount thereof.

26. As a direct and proximate result of Defendant's false and misleading statements, Plaintiff and the putative class members paid a price premium when purchasing LMNT, paying more for the electrolyte drink mixes than they otherwise would have paid or paying for a product they would not have purchased at all absent Defendant's wrongful conduct.

27. More specifically, while a resident of Nevada, Plaintiff Thomas purchased a box of LMNT electrolyte drink mix (Orange Salt flavor) in August 2023, on amazon.com and paid the purchase price of $45, which was delivered to Henderson, Nevada. After moving and while a resident of Florida, Plaintiff Thomas purchased 23 additional boxes of LMNT electrolyte drink mix (including both Orange Salt and Citrus Salt flavors) between December 2023 and May 2025 on amazon.com and paid the purchase price of $45 per box, which were delivered to Fort Lauderdale, Florida. While living in Florida, Plaintiff Thomas also purchased LMNT electrolyte drink mix at a local retailer in this District.

28. Plaintiff Thomas, like other reasonable consumers, was deceived by Defendant's false and misleading statements which materially impaired his ability to choose the type, quality, contents, and price of the product he was choosing to buy. Consumers like Plaintiff reasonably rely on advertising and product information when making purchasing decisions.

---

[6] https://science.drinklmnt.com/did-you-know/natural-flavors (last visited July 9, 2025).

9

29. At all times, Plaintiff purchased the LMNT products based on the Defendant's product descriptions and representations on its packaging and advertisements, including that the product was a whole-food product, that it was all natural, sugar-free, and contained no fillers or artificial ingredients, as well as that it is Paleo/Keto-Friendly. Had Plaintiff known that LMNT products contained maltodextrin, he would not have paid a price premium for it or would not have purchased it at all.

30. As a trainer with a focus on dietary goals and sensitivities, Plaintiff Thomas is a "health-seeking" consumer targeted by Defendant and fell victim to the false, deceptive and misleading representations made by LMNT about its products.

31. Plaintiff Thomas and other LMNT purchasers suffered economic injury in connection with purchasing the LMNT products, which were not as represented (i.e. that the products did not contain any artificial fillers, processed additives, or ingredients not identified on the list). As a result of the foregoing false, deceptive and misleading conduct, Plaintiff and the class purchased a product that was valueless or paid a price premium for the LMNT products.

32. Subsequent to his discovery that LMNT contains maltodextrin, Plaintiff Thomas stopped ingesting or purchasing LMNT products.

33. All conditions precedent, if any, to the filing and maintenance of this lawsuit have been satisfied or waived.

## CLASS ALLEGATIONS

34. Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Federal Rule 23(a), (b)(2) and (b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

35. Plaintiff proposes certification of the following Florida and Nevada Classes and

10

additionally and/or alternatively, a National Class (all referred to collectively as the "Class"):

**The Florida Class**

All Florida residents who purchased LMNT electrolyte drink mix products for personal use and not for resale within the relevant limitations period through the date notice is provided to the Florida Class.

**The Nevada Class**

All Nevada residents who purchased LMNT electrolyte drink mix products for personal use and not for resale within the relevant limitations period through the date notice is provided to the Nevada Class.

**The National Class**

All United States residents who purchased LMNT electrolyte drink mix products for personal use and not for resale within the relevant limitations period through the date notice is provided to the National Class.

Plaintiff reserves the right to modify or amend the definition of the proposed Class and/or add sub-classes, as necessary, before the Court determines whether certification is appropriate and as the Court may allow.

36.     Excluded from the Florida and Nevada Classes and the National Class are the following:

a.     Defendant and any parent, subsidiaries, affiliates, or entities in which Defendant has a controlling interest;

b.     Defendant's officers, directors, or employees and any of the legal representatives, heirs, successors, or assigns of Defendant; and

c.     The Judge(s) to whom this case or any transferred case is assigned and any member of the Judge's immediate family and any other judicial officer assigned to this case or any transferred case.

37.     Numerosity - Fed. R. Civ. P. 23(a)(1).  Based on the publicly reported annual sales

11

of the LMNT products, it is readily apparent that the number of consumers in both the Statewide Classes and the National Class is so large as to make joinder of all members impractical. The Class consists of thousands of members and the identity of those persons can be ascertained as it is within the knowledge of Defendant and the product purchase records.

38.      Commonality - Fed. R. Civ. P. 23(a)(2) and (b)(3).  Defendant's practices and omissions were applied uniformly to all members of the Class, including any subclass, so that the questions of law and fact are common to all members of the Class and any subclass. All members of the Class and any subclass were and are similarly affected by the deceptive advertising for the LMNT products, and the relief sought herein is for the benefit of Plaintiff and members of the Class and any subclass.  Moreover, the questions of law and fact common to the Class predominate over any questions affecting only individual Class members.  Among the questions of law and fact common to the Class are:

(a)      Whether the claims derive from a uniform course of conduct by Defendant regarding the LMNT marketing, advertising, and sales of the LMNT products;

(b)      Whether the LMNT products are all-natural;

(c)      Whether the LMNT products contain artificial ingredients, processed foods, or fillers;

(d)      Whether claims such as "No Artificial Ingredients" "All Natural" and "No Dodgy Ingredients" on the packaging and advertising is material to a reasonable consumer;

(e)      Whether a reasonable consumer under the circumstances is likely to be deceived by the product descriptions and ingredient list at issue;

(f)      Whether Defendant's representations about the LMNT products are false, deceptive, unfair or misleading;

12

(g)     Whether Defendant concealed the presence of maltodextrin on the product packaging, ingredient list, and advertising;

(h)     Whether Defendant's conduct and business practices constitute a violation of law;

(i)     Whether Defendant has been unjustly enriched in connection with the sale of the LMNT products; and

(j)     Whether the wrongdoing alleged in this action resulted in economic injuries to Plaintiff and the Class, and the proper methods by which to measure damages.

39.     Typicality – Fed. R. Civ. P. 23(a)(3).  Plaintiff asserts claims that are typical of the Class it purports to represent that arise from the same course of conduct by Defendant, and having paid for a product that was falsely and deceptively represented.  Plaintiff and the Class members have similarly suffered harm arising from Defendant's wrongdoing as alleged in this Complaint.

40.     Adequacy of Representation - Fed. R. Civ. P. 23(a)(4); 23(g)(1).  Plaintiff is an adequate representative of the Class because Plaintiff fits within the class definition and Plaintiff's interests do not conflict with the interests of the members of the Class that Plaintiff seeks to represent.  Plaintiff will zealously prosecute this action for the benefit of the entire Class.  Plaintiff is represented by experienced and able attorneys from a law firm that has previously served as class counsel.  Class counsel has litigated numerous class actions, and Plaintiff's counsel intends to prosecute this action vigorously for the benefit of the entire Class.  Plaintiff and class counsel can fairly and adequately protect the interests of the Class.

41.     Superiority of Class Action - Fed. R. Civ. P. 23(b)(3).  The class action is the best available method for the efficient adjudication of this litigation because individual litigation of Class members' claims would be impracticable and individual litigation would be unduly burdensome to the courts.  Plaintiffs and members of the Class have suffered harm because of

13

Defendant's improper conduct. Without the class action vehicle, the Class members would need to retain separate counsel at great burden and expense, and effectively have no reasonable remedy, and Defendant would continue to engage in the improper conduct that is the subject of this Complaint. Further, individual litigation has the potential to result in inconsistent or contradictory judgments. A class action in this case presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. There will be no difficulty in the management of this action as a class action.

42. Injunctive and Declaratory Relief - Fed. R. Civ. P. 23(b)(2). Defendant's conduct is uniform as to all members of the Class and the deceptive marketing of the products in ongoing, so that final injunctive relief is appropriate with respect to the Class as a whole.

**COUNT I – VIOLATION OF FLORIDA'S DECEPTIVE AND
UNFAIR TRADE PRACTICES ACT
(on behalf of Plaintiff and the Florida Class)**

43. Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 42 as if fully set forth herein.

44. This claim seeks relief pursuant to the Florida Deceptive and Unfair Trade Practice Act ("FDUTPA").

45. The express purpose of FDUTPA is to "protect the consuming public...from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." *Fla. Stat*. § 501.202(2).

46. At all times material, Plaintiff and all members of the Florida Class were consumers within the meaning of § 501.203, *Fla. Stat*., and are entitled to relief under FDUTPA in accordance with § 501.211, *Fla. Stat*.

47. At all times material, Defendant conducted trade and commerce within the meaning

of § 501.203, *Fla. Stat.* and its goods are subject to FDUPTA.

48.     FDUPTA expressly declares that "unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

49.     A "deceptive act" under FDUPTA is a representation, omission, or practice that is likely to mislead the consumer, while a practice is deemed "unfair" if it offends established public policy or is immoral, unethical, oppressive, or substantially injurious to consumers.

50.     Defendant engaged in consumer-oriented conduct by marketing and selling LMNT to consumers, including Plaintiff and the Class, through its website, online, and other retail channels.

51.     Defendant's marketing, packaging, and advertising of LMNT is materially misleading, unfair, and deceptive within the meaning of FDUPTA.

52.     Defendant's unfair and deceptive practices are likely to mislead -- and have misled -- reasonable consumers, such as Plaintiff and members of the Florida Class, and therefore, violate Florida law.

53.     Defendant's representations about LMNT convey to a reasonable consumer that the electrolyte drink mix product is a clean, whole-food nutritional supplement free from highly processed food additives and that the products are consistent with Paleo-Keto diets.  Defendant's representations are likely to mislead reasonable consumers acting reasonably under the circumstances.

54.     These unfair and deceptive acts -- all of which occurred in connection with Defendant's trade and commerce in Florida -- had a tendency and capacity to mislead a consumer, like Plaintiff and the Florida Class members, and are offensive to public policy, unethical, unconscionable and oppressive.

15

55.     As alleged herein, Defendant failed to deal with consumers fairly.

56.     Defendant's unlawful trade practices affected and have an adverse impact on the public interest as they have the potential for repetition as ongoing conduct and practices.

57.     Plaintiff and the Florida Class members have been aggrieved by Defendant's unfair and deceptive practices in violation of FDUTPA, in that they purchased and consumed Defendant's misrepresented products.

58.     Plaintiff and the Florida Class paid a price premium for a product that was deceptively marketed as a clean, whole-food nutritional supplement despite the presence of significant amounts of maltodextrin, a highly processed food additive.  Had Plaintiff and the Florida Class members known that LMNT contained maltodextrin, they would not have purchased the product at all and would not a paid a price premium for it.

59.     Plaintiff and the Florida Class have been injured as a result of Defendant's false and misleading advertising, suffering an ascertainable economic injury by purchasing the product, or alternatively by paying a price premium for a product than they otherwise paid (but for the deceptive and unfair conduct).

60.     As a direct and proximate result of Defendant's FDUTPA violations, Plaintiff and the Florida Class have incurred actual damages, and are also entitled to recover attorneys' fees and costs pursuant to 501.211(2) and 501.2105(1) which are hereby demanded, and all other relief and remedies available under FDUTPA.

61.     Plaintiff and the Florida Class demand all available damages, in addition to reasonable attorneys' fees and costs, and injunctive relief to prevent Defendant from continuing to engage in the unlawful conduct.

## COUNT II – VIOLATION NEVADA'S DECEPTIVE TRADE PRACTICES ACT
### (on behalf of Plaintiff and the Nevada Class)

62.     Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 42 as if fully set forth herein.

63.     This claim seeks relief pursuant to Nevada's Deceptive Trade Practices Act ("DTPA").

64.     Plaintiff and the Nevada Class members are consumers of Defendant's goods (LMNT electrolyte drink mix) and victims of consumer fraud as a result of Defendant's conduct in the course of business in Nevada.

65.     By virtue of its advertising, marketing, and packaging, Defendant created the false and misleading impression that LMNT electrolyte drink mix as a clean, all-natural, whole-food nutritional supplement free from highly processed food additives, as well as consistent with Paleo/Keto diets.

66.     However, Defendant made false representations knowingly and willfully because it was at all times aware of the substantial presence of maltodextrin in the LMNT products, which is not a natural ingredient but rather a synthetic or artificial food additive or filler.

67.     In violation of DTPA, Defendant knowingly passed off the LMNT goods for sale to Plaintiff and the Nevada Class by using deceptive and false representations as to the characteristics, ingredients, benefits, and quality relating thereto.   Defendant knew or should have known that the products were of another standard, quality, and content because of the presence of maltodextrin.

68.     These unfair and deceptive acts -- all of which occurred in connection with Defendant's trade and commerce in Nevada -- had a tendency and capacity to mislead a consumer, like Plaintiff and the Nevada Class members, who relied on the accuracy of Defendant's

17

representations about the products.

69.     Plaintiff and the Nevada Class members have been directly harmed by Defendant's violations of the DTPA.  Had Plaintiff and the Nevada Class members known that LMNT contained maltodextrin, they would not have purchased the product at all or would have paid significantly less.

70.      Plaintiff and the Nevada Class demand recovery of the damages caused by Defendant's wrongdoing, attorneys' fees and costs pursuant to the DTPA, injunctive relief to prevent Defendant from continuing to engage in unlawful conduct, and all other relief and remedies available under the DTPA.

### COUNT III - UNJUST ENRICHMENT
### (on behalf of Plaintiff and the National Class)

71.     Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 42 as if fully set forth herein.

72.     Plaintiff, on behalf of himself and the National Class, asserts a common law claim for unjust enrichment.  This claim is brought in the alternative to other counts asserted.  If the other claims are unenforceable, unjust enrichment will dictate in equity that Defendant disgorge all wrongfully obtained benefits.

73.     Through the wrongful practices alleged herein, Defendant knowingly participated in conduct that falsely and deceptively mispresented the LMNT products so that consumers would purchase the products for the benefit of Defendant. Defendant received monetary benefits from Plaintiff and the class members by selling LMNT and by doing so at an artificially inflated price.

74.     Plaintiff and National Class members conferred a benefit on Defendant by purchasing the LMNT products.

75.      Defendant accepted and retained the benefits in the amount of the purchase price

18

and/or profits it earned from sales of the products.

76.     Defendant knowingly received and wrongfully retained the benefits and funds from Plaintiff and the National Class members and in so doing, Defendant acted with conscious disregard for the rights of Plaintiff and the National Class members.

77.     As a direct and proximate result, Defendant has been unjustly enriched at the expense and to the detriment of Plaintiff and National Class members.

78.     Plaintiff and National Class members do not have an adequate remedy at law against Defendant (pled in the alternative to the other causes of action alleged herein).

79.     Defendant's retention of the funds and benefits therefrom under these circumstances is inequitable and constitutes unjust enrichment.  Defendant should be compelled to disgorge such benefits to a common fund for Plaintiff and members of the National Class.

80.     Plaintiff and National Class members are entitled to restitution in an amount not less than the purchase price of the Products paid by Plaintiff and National Class members. Alternatively, Plaintiff and National Class members are entitled to restitution of the excess amount paid for the products as a price premium.

## JURY TRIAL DEMAND

Plaintiff and the Class members demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class demand the following relief and judgment in their favor:

1.     Class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointment of Plaintiff as representative of each Class, and appointment of the undersigned as Class counsel;

19

2.    Finding liability and entering judgment for violation of Florida's Deceptive and Unfair Trade Practices Act against Defendant DRINK LMNT, INC.;

3.    Finding liability and entering judgment for violation of Nevada's Deceptive Trade Practices Act against Defendant DRINK LMNT, INC.;

4.    Finding liability and entering judgment for unjust enrichment against Defendant DRINK LMNT, INC.;

5.    Awarding Plaintiff and the Class damages, attorney's fees, costs, and any other appropriate relief under Counts I, II, and III;

6.    Awarding Plaintiff and the Class any other relief including disgorgement, restitution, declaratory, and injunctive relief to foreclose unlawful ongoing practices by Defendant;

7.    Awarding pre-judgment interest at the maximum rate permitted by applicable law;

8.    Reimbursing all costs and disbursements accrued by Plaintiff in connection with this action, including reasonable attorneys' fees and expenses via a common fund to class counsel or as otherwise permitted by applicable law; and

9.    Awarding such other relief as this Court deems just and proper.

DATED this 11th day of July, 2025.

*/s/ Cristina M. Pierson*
**KELLEY│UUSTAL, PLC**
500 N. Federal Highway, Suite 200
Fort Lauderdale, FL  33301
Cristina M. Pierson, Esquire
Florida Bar No. 984345
cmp@kulaw.com
madeleine@kulaw.com

20